## Virginia and Celesie, f. p. c. *v.* D. and C. Himel.

A copy of a record appertaining to a court, certified under the Act of Congress of 20th May, 1790, by the attestation of the clerk with the seal of the court annexed and certificate of the Judge, that the attestation is in due form, is competent evidence.

By the laws of Louisiana a slave may make a contract with his master for his freedom.

Prior to the Act of 1846, "To protect the rights of slaveholders in Louisiana," the removal of a master with his slaves to reside in a free State, had the effect *ipso facto* of setting them free, and the right to freedom was not forfeited by the return of the slave to Louisiana.

The Article 190 C. C. and not 1492 C. C, governs the right of the master to make what may be called a donation to a slave of his value by an act of emancipation. The act of emancipation is considered fraudulent *quad* the heirs, when, at the time it was made, the owner had not sufficient property to leave to his heirs the portion reserved to them by law.

Persons claiming freedom, have a right to offer evidence of the property of their owner at the date of emancipation, and unless their value exceeded the disposable portion of that property, the right to emancipate is unquestionable.

The burden of proof, if it could be said to rest on the claimant, was shifted to the contestants after they had objected to the introduction of evidence as to the property of the owner. After this objection, the party making it will in vain argue in this court that the claimant should produce such evidence. Parties cannot be permitted thus to shift their position and contend for one thing in the lower court and for what is directly opposite to it in the appellate court.

The fact that the emancipated slave was a concubine of the owner, is not one of the causes which the law has declared to be sufficient to render the enfranchisement null and void.

C. C. 174, 177.

APPEAL from the District Court of the parish of Assumption, *Cole, J.*

*Gentile,* for plaintiff :

The mere fact of plaintiffs going to a free State with the consent of their owner, entitled them to their freedom, 7 L. R. 170 ; 2 Martin N. S. 401; 9 L. R. 473; 13 L. R. 444; 1 Ann. 473; 2 Ann. 180, and numerous other cases. The Act of 1842, p. 314, clearly shows that such was the intention of the law-giver, for after prohibiting masters to carry their slaves to free States, (which consequently they could do before this Act.) The law considering them free on their return subjects them to all the penalties provided in the same Act against *free persons of color ;* and the creditors by privilege or mortgage are driven to an action in damages against the owner, this Act clearly shows that the freedom of a slave carried by his master to a free State is absolute and irrevocable, and that Art. 190 of the Civil Code applies only to enfranchisements executed in this State.

The statute of 1846 can have no retroactive effect and destroy rights previously acquired, 2 Ann. 180, this statute shows that the law was different before ; otherwise it would have been vain. Besides, *Joseph Bernard* went to Ohio to free these slaves.

His declarations were admissible to show that he had been in Ohio with these individuals and set them free there. 5 Ann. p. 355, Greenleaf, § 108.

Plaintiffs are entitled to their freedom under the deed acknowledged in Missouri, and correctly admitted in evidence. Gordon's Dig. p. 207. *Joseph Bernard* was permitted by law to emancipate his slaves in another State according to the laws of that State. Act of 1830, sec. 16, p. 94, 13 L. R. 446. The opinion and reasoning of the Court in the case last cited fully answers all the arguments of defendants on this point.

Even if the emancipation had taken place in this State, the non-observance of the formalities required by law, could not avail defendants; "they have no right to avail themselves of the requisites which the legislature have imposed for public purposes. 5 Rob. 213.

The subsequent return of plaintiffs could not destroy their freedom once acquired. 8 Ann. 61; 1 Ann. 473, and numerous other cases. Act of 1842, p. 314; Act of 1830, p. 94; 4 Martin, 385; 16 L. R. 489.

*J. C. & A. Beatty,* for defendants and appellants:

The defendants refer the court to Articles 1468, 1470, and 1478 of the Civil Code, for the liberality which the code permits to be exercised towards persons

24

standing in the relation that *Melite* and her children did to *J. Bernard*, and submit, that if the word donation in Article 1468 be not sufficiently broad to include the gift of personal liberty, which the judge holds to be neither movable nor immovable, it may be embraced in the more extensive term of disposition employed in Article 1478. They also refer to the decisions of this court in the case of *Cole* v. *Lucas*, 2 Ann. 964, and that of *Mary*, f. w. c., v. *Daniel L. Brown*, 5 Ann. 259, on the subject of emancipations made in other States, in fraud of the law, of the residence of the master.

OGDEN, J. These cases were consolidated and came before us on appeal by the defendants.

In one suit *Celesie*, a quateroon, and her children *Victorine* and *Gustave*, and in the other, *Virginie*, a sister of *Celesie* and her child *Philomone* claim their freedom. *Celesie* and *Virginie* were the children of a mulatress slave named *Melite*, who belonged to *Joseph Bernard*. They were born in the State of Louisiana in the condition of slavery, their mother then being the property of *Bernard*. In 1835, *Bernard* left the State with the petitioners and their mother and carried them to the State of Ohio. From Ohio he went with them to the State of Missouri, and subsequently they returned together to the State of Louisiana, where *Bernard* died about the year 1842.

The legitimate children and heirs of *Bernard* took possession of the plaintiffs *Celesie* and *Virginie* as the property of their father. *Celesie* was bought from the heirs by *Claivelle*, and *Virginie* by *Drausin Himel*. The two *Himels* against whom the suits are brought, have called in warranty their vendors the heirs of *Bernard*.

The plaintiffs claim their freedom by virtue of an act of emancipation executed by *Joseph Bernard* on the 2d of June, 1835, in the city of Cincinnati, and acknowledged, first, before the Mayor of that city, and afterwards before the Circuit Court of the city of St. Louis, in the State of Missouri. They also claim to have acquired their liberty by virtue of the removal of their former owner to a free State, with the intention of residing there and of liberating them, and furthermore set up a title to freedom by prescription.

By an Act of the Legislature of Missouri, which is in evidence and which was in force at the time *Joseph Bernard* acknowledged the act emancipating his slaves, *Melite* and her children, the acknowledgment by the owner of such an instrument, before the Circuit Court of the county where he resides, is recognized as a legal mode of emancipation. The Act of the Legislature makes it the duty of the clerks of the courts to deliver to the slave they emancipated a copy of the act of emancipation, attested by the clerk under the seal of the court before which the acknowledgment was made. A copy thus attested was offered in evidence by the plaintiffs and, we think, was properly received. The objections to it reserved in a bill of exceptions were that

1st. That the orignal should have been produced.

2d. That the clerk should have certified to the qualifications of the Judge.

3d. That *Joseph Bernard* was a resident of Louisiana and the Act of the Legislature of Missouri only authorized residents of Missouri to emancipate their slaves in that manner.

These objections were all untenable. There is no reason to suppose that the original could have been in the possession of or within the control of the plaintiffs. The record was one appertaining to a court and properly certified under the Act of Congress of the 20th May, 1790, by the attestation of the clerk, with the seal of the court annexed, and certificate of the Judge, that the attes-

tation was in due form. Gordon's Dig., Art. 1317. The evidence shows that *Bernard* did, at least, temporarily, reside in the county where the acknowledgment was made.

It is fully established that *Bernard* went out of the State for the purpose of emancipating *Melite* and her children. Besides *Celesie* and *Virginie*, there was another child called *Eupherenie;* the then children, with their mother, were emancipated first in a State where slavery is not tolerated, and afterwards in a slave state, where emancipation was permitted according to the forms adopted by the owner to set these slaves free.

The only question, therefore, concerning their title to freedom, is presented by the objection which has been strongly urged in the defence, that the emancipation was made in fraud of our laws and of the portion reserved by law to the plaintiffs, as the forced heirs of their father.

In support of the objection that the emancipation was made in fraud of our laws, the case of *Mary*, f. w. c., v. *Brown*, 5 Ann. 269, is relied on by the appellants. That case was decided under the laws of Mississippi, which are entirely different from our own on that subject. By the laws of that State a slave can derive no right to his freedom without an Act of the Legislature of the State permitting his emancipation. On the contrary, our laws permit a slave to make a contract with his master for his freedom. C. C., Arts. 174, 177. *Trapan* v. *Trapan*, 8 Ann. 455. In 1846, the Legislature of Louisiana passed an act entitled an Act " To. protect the rights of slaveholders in the State of Louisiana." This Act declares that thereafter no slave shall be entitled to his or her freedom, under the pretence of having been, with or without the consent of the owner; in a country where slavery does not exist. There can be no doubt that before that Act was passed, the removal of the master with the slave to a free State had the effect *ipso facto* of setting the slave free, and that the right to freedom was not forfeited by the return of the slave to Louisiana. See cases—*Marie Louise* v. *Marcot*, 8 L. R. 475. *Eugenie* v. *Preval et al.*, 2 Ann. 180. *Smith*, f. w. c., v. *Smith*, 13 L. R. 444.

The principal difficulty in awarding to the petitioners the freedom which their master conferred upon them by a most solemn and deliberate act of emancipation arises out of our system of forced heirships. To a certain and very large extent a man's children by our laws are viewed in the light of his creditors for whatever fortune by his industry he may be enabled to accumulate. For the protection of the rights of creditors and forced heirs, Art. 190 of the Civil Code has provided as follows: "That any enfranchisement made in fraud of creditors or of the portion reserved by law to forced heirs is null and void; and such plea should be considered as proved, when it shall appear that at the moment of executing the enfranchisement, the person granting it had not sufficient property to pay his debts or to leave to his heirs the portion to them reserved by law." In the present case it is charged by the children of *Joseph Bernard* , that the emancipation of the· petitioners was made in fraud of their rights. As it appears by the inventory of *J. Bernard's* estate that the property he left at his death, including *Melite* and her children, only amounted to $1368. If we are to follow the rule laid down in Article 1492 of the Code for determining the reduction of donations to the *disposable quantum*, the act of emancipation would be null and void. The Art. 190, however, has established a different rule applicable to what may be called a donation to a slave of his value by an act of emancipation. The emancipation is considered

CELESIE
v.
HIMEL.

fraudulent in case it is proved that at the time it was made, the owner had not sufficient property to leave to his heirs the portion reserved to them by law.

The plaintiffs offered in evidence to prove the property owned by *Joseph Bernard* at the date of the emancipation, and the defendants objected to their right to do so. To sustain the charge of fraud, proof was necessary of what property *Bernard* then owned. Unless the value of *Melite* and her children then exceeded the disposable portion of his property he had clearly the right to emancipate them. The burden of proof if it could be said to have vested on the plaintiffs was shifted to the defendants, after the defendants had objected to the plaintiffs being permitted to introduce any evidence on the subject. It is in vain for the defendants counsel to argue before us that the plaintiffs were bound to establish what property *Bernard* then had, when the record shows that in the lower court they objected to any such proof. Parties cannot be permitted thus to shift their position and contend for one thing in the lower court and for what is directly opposite to it in the appellate court, and asks at our hands for relief, because testimony was not adduced which the record shows was excluded by themselves. Another ground of defence is, that *Melite* was the concubine of *Joseph Bernard*, and that the emancipation was a gift of so much of his estate, which by law is prohibited to be made to one standing in that relation.

The law has declared what causes shall be sufficient to render the enfranchisement of a slave null and void, and this is not one of them.

We are of opinion the plaintiffs are entitled to their freedom.

*Celesie* having died during the pending of the suit, her children *Victorine* and *Gustave*, who are plaintiffs and who were born after the emancipation of their mother are entitled to a claim for their liberty, their rights are recognized in the reasons assigned by the Judge for his judgment, but seems to have been overlooked in the decree itself, which must therefore be amended.

It is therefore ordered, adjudged and decreed, that *Victorine* and *Gustave*, the children of *Celesie* as well as *Virginie* and her children born since the deed of emancipation by *Joseph Bernard*, be forever quieted in the exercise and enjoyment of their liberty against all claims and pretensions of the defendants, *Clairville* and *Drausin Himel*, and it is further ordered that the judgment of the court below thus amended, be affirmed at the costs of the appellants.